IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:25-CV-00491-FL

**Michelle Mooring,**

Plaintiff,

v.

**Frank J. Bisignano**, Commissioner of Social Security,

Defendant.

**Memorandum & Recommendation**

Plaintiff Michelle Mooring challenges an Administrative Law Judge's decision to deny her application for Social Security disability insurance benefits and Supplemental Security Income. Mooring claims that the ALJ erred in her decision by failing to properly assess her ability to reach when determining her residual functional capacity (RFC). Both Mooring and Defendant Frank J. Bisignano, Commissioner of Social Security, seek a ruling in their favor. D.E. 17, 18.

After reviewing the parties' arguments, this opinion recommends that the district court grant Mooring relief and remand this matter to the Commissioner.[1] The ALJ failed to explain how the evidence supported a limitation for occasional overhead reaching. Nor is it clear why Mooring's limitations relate only to reaching overhead and do not apply to reaching in other directions. An assessment of this contested function was necessary, but not performed. These errors call into question the RFC determination and preclude a substantial evidence finding. The court should grant Mooring relief, deny Bisignano relief, and remand this matter to the Commissioner for further consideration.

[1] The presiding district judge referred this matter for issuance of a recommendation under 28 U.S.C. § 636(b).

## I. Background

### A. Factual[2]

In 2016, Mooring suffered a work injury to her left shoulder that required the surgical reattachment of her biceps muscle. Tr. at 26. Five years later, she complained of widespread joint pain, including in the right shoulder. Tr. at 87–88.

In November 2021, Mooring rated her shoulder pain as nine out of ten in intensity. Tr. at 1688. It limited her ability to reach and carry and caused difficulty with sleep. *Id.* On exam, Mooring had decreased range of motion, so providers administered an injection. Tr. at 1690. An MRI showed an incomplete tear at the rotator cuff. Tr. at 1688.

She again displayed reduced range of motion in her shoulder the next month. Tr. at 1685. Mooring claimed that her right shoulder pain began 18 months earlier and had worsened over the past three months. *Id.*

Mooring began a course of physical therapy to address her shoulder pain that radiated into her upper extremity. Tr. at 1682. An initial assessment found tenderness, diminished strength, and bilateral reduction of both flexion and abduction. Tr. at 1681, 1683–84. A physical therapy goal was to improve Mooring's shoulder range of motion "in all directions." Tr. at 2655. Despite physical therapy, Mooring continued to experience pain, reduced motion, and functional limitations from her shoulder condition over the next several weeks. Tr. at 1674.

In March 2022, Mooring underwent capsular release, subacromial decompression, and distal clavicle excision on her right shoulder. Tr. at 1668. She resumed physical therapy where the provider noted weakness, decreased sensation, limited motion, and functional limitations with

[2] Because Mooring's arguments focus on her shoulder and related conditions and the limitations that result, the undersigned limits the overview of the medical evidence to those matters.

reaching activities. Tr. at 1659–60. Therapy goals reaffirmed increasing the right shoulder range of motion "in all planes" and improving her range of motion for reaching tasks. Tr. at 1658.

The following month, Mooring had not reached her physical therapy objectives. And the pain and limited motion in her shoulder continued. Tr. at 1624–25, 1631. By June, her therapist noted that any initial improvements did not last and her shoulder mobility had declined significantly. Tr. at 1619. Mooring displayed "significant limitations in shoulder flexion and abduction" along with tightness in her shoulder muscles. *Id.* Later visits reflect continued reports of bilateral shoulder pain and upper extremity weakness as well as neck pain and limited range of motion. Tr. at 1612, 1618, 2271–72, 2281.

In May 2023, after the relevant period ended, Mooring fell and hurt her left shoulder. Tr. at 2396. She resumed physical therapy where treatment records reflected weakness as well as limited abduction, flexion, and external rotation. Tr. at 2479–82. Her limited range of motion continued at later examinations. Tr. at 2332, 2374, 2456–57, 2468. A cervical spine x-ray showed moderate right foraminal stenosis due to bone spurring with questionable nerve root impingement. Tr. at 2509. And an MRI revealed severe osteoarthritis in the glenohumeral joint and moderate to severe supraspinatus tendinopathy. Tr. at 2369.

Mooring underwent left shoulder replacement in March 2024. Tr. at 3913. Three months later, she continued to demonstrate limited range of motion. Tr. at 3940.

Mooring testified that she continues to experience diffuse pain, including in her neck, back, and shoulders. Tr. at 28–29. She limits the distances she drives to short distances—about five miles—because she cannot use both arms well. Tr. at 24. Her right shoulder freezes up, limiting her ability to raise her right arm or do anything with it. Tr. at 30.

When her shoulder conditions flare, Mooring cannot hold her arm straight out nor reach it in front as one normally could. *Id.* With her right upper extremity, she can reach into a cabinet that is not too high but cannot do so with her left upper extremity. Tr. at 31. She also experiences numbness and tingling in her fingers. *Id.*

**B. Procedural**

In February 2023, Mooring applied for disability insurance and supplemental security income alleging a disability that began in March 2020.[3] After the Social Security Administration denied her claim at the initial level and upon reconsideration, Mooring appeared for a telephonic hearing before an ALJ to determine whether she was entitled to disability insurance benefits and supplemental security income. The ALJ concluded that Mooring was not disabled within the meaning of the Social Security Act. Tr. at 81–92.

At step two, the ALJ found that Mooring lived with several severe impairments. Tr. at 83. Among them were hypertension, colon cancer, obesity, osteoarthritis, and major depressive disorder. *Id.* The ALJ also found that Mooring's impairments, either alone or in combination, did not meet or equal a Listing impairment. Tr. at 84.

Next, the ALJ determined that Mooring had the residual functional capacity (RFC) to perform light work with other limitations. Tr. at 86. She can occasionally climb ladders, ropes, and scaffolds, as well as stoop. *Id.* Mooring can occasionally reach overhead with her bilateral upper extremities. *Id.* And she must avoid concentrated exposure to hazards such as dangerous machinery and unprotected heights. *Id*.

Mooring can understand, remember, and carry out simple instructions and use judgment to make simple, work-related decisions. *Id.* She can maintain attention, concentration, and pace

[3] Mooring later amended her alleged onset date to April 2021. Tr. at 81.

sufficient to carry out those simple instructions in at least two-hour intervals over the course of an eight-hour workday. *Id.* She can deal with occasional changes in the work setting. *Id.* And Mooring can work in occupations that have occasional contact with the public. *Id.*

Then the ALJ concluded that Mooring had no past relevant work. Tr. at 90. But the ALJ also determined that, considering her age, education, work experience, and RFC, Mooring could perform other jobs that exist in significant numbers in the national economy. Tr. at 90–91. Those jobs included office helper, router, and order caller. *Id.* The ALJ therefore concluded that Mooring was not disabled. *Id.*

After unsuccessfully seeking review by the Appeals Council, Mooring commenced this action in August 2025. D.E. 1. Both parties ask the court to issue a judgment in their favor. D.E. 17, 18.

## II. Analysis

Mooring asserts that the ALJ failed to explain how the evidence supported a limitation to occasional overhead reaching without restrictions on her ability to reach in other directions. A review of the decision discloses no basis for limiting Mooring's reaching restriction to overhead reaching. The evidence raises questions about Mooring's ability to reach in directions other than overhead, so the court cannot determine whether the RFC accurately reflects her functional abilities. This error warrants remand.

### A. Standard for Review of the Commissioner's Final Decision

When reviewing the Commissioner's final decision, the court considers whether the ALJ applied the correct legal standards and whether the ALJ's factual findings are supported by substantial evidence. 42 U.S.C. § 405(g); *Dowling* v. *Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 382–83 (4th Cir. 2021). Substantial evidence is "such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion." *Biestek* v. *Berryhill*, 587 U.S. 97, 103 (2019) (quotation omitted). Although this threshold is not high, it requires more than a mere scintilla of evidence. *Dowling*, 986 F.3d at 383. In conducting this review, the court may not reweigh conflicting evidence, make credibility determinations, or substitute its judgment for the ALJ's. *Shinaberry* v. *Saul*, 952 F.3d 113, 123 (4th Cir. 2020). But the court must ensure that the ALJ's opinion is thorough enough to allow the court to engage in meaningful judicial review. To meet this standard, the ALJ must identify the evidence supporting the decision and connect that evidence to the opinion's conclusions. *Woods* v. *Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018), *superseded on other grounds as recognized in Rogers* v. *Kijakazi*, 62 F.4th 872, 878–80 (4th Cir. 2023).

**B. Standard for Evaluating Disability**

Under Titles II and XVI of the Social Security Act, a claimant is disabled if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" that can be expected to result in death or that has lasted or can be expected to last for at least 12 continuous months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

First, at step one, the ALJ considers whether the claimant is engaged in substantial gainful activity. *Id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If so, the claim is denied. *Id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Then, at step two, the ALJ looks at whether the claimant has a severe impairment or combination of impairments that significantly limits the claimant's ability to perform basic work activities. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If not, the claim is denied. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

Next, at step three, the ALJ compares the claimant's impairments to those in the Listing of Impairments. *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment meets or medically

equals a listed impairment and satisfies the duration requirement, the ALJ must find that the claimant is disabled. *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

But if the ALJ concludes that a presumption of disability is not warranted, the ALJ must then assess the claimant's residual functional capacity ("RFC"). A claimant's RFC "is the most work-related activity the claimant can do despite all of the claimant's medically determinable impairments and the limitations they cause." *Arakas* v. *Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 90 (4th Cir. 2020). Determining the RFC requires the ALJ to "first identify the claimant's 'functional limitations or restrictions' and assess the claimant's 'ability to do sustained work-related' activities 'on a regular and continuing basis'—i.e., '8 hours a day, for 5 days a week, or an equivalent work schedule.'" *Id.* (quoting SSR 96–8p, 1996 WL 374184, at *1 (July 2, 1996)). The ALJ will then "express the claimant's Residual Functional Capacity 'in terms of the exertional levels of work[:] sedentary, light, medium, heavy, and very heavy.'" *Id.* (alteration in original).

After assessing the claimant's RFC, the ALJ, at step four, considers whether the claimant can perform their past relevant work despite the claimant's impairments. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can, the ALJ will deny the claim. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot, the analysis moves on to step five.

This final step considers whether the claimant, based on his age, education, work experience, and RFC, can adjust to other work that exists in significant numbers in the national economy. *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make that adjustment, they are not disabled; if the claimant cannot, they are disabled. *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

The burden of proof shifts between the Commissioner and the claimant during the evaluation process. The claimant bears the burden through step four. At step five, the burden shifts

to the Commissioner to establish that the claimant can perform other work existing in significant numbers in the national economy. *Pass* v. *Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

### C. Residual Functional Capacity

Mooring challenges the residual functional capacity (RFC) determination claiming that the ALJ did not explain how the evidence supported the reaching limitations she found. The Commissioner maintains that Mooring failed to establish she has difficulty reaching in directions other than overhead and the disability decision sufficiently articulates the ALJ's rationale for the findings she made. The undersigned finds that Mooring raises a meritorious argument.

The RFC is a determination, based on all the relevant medical and non-medical evidence, of what a claimant can still do despite his impairments; the assessment of a claimant's RFC is the responsibility of the ALJ. *See* 20 C.F.R. §§ 404.1520, 404.1545, 404.1546; SSR 96–8p, 1996 WL 374184, at *2. If more than one impairment is present, the ALJ must consider all medically determinable impairments, including medically determinable impairments that are not "severe," when determining the claimant's RFC. *Id.* §§ 404.1545(a), 416.945(a). The ALJ must also consider the combined effect of all impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. *Id.* § 404.1523; *see Walker* v. *Bowen*, 889 F.2d 47, 50 (4th Cir. 1989) ("[I]n evaluating the effect[] of various impairments upon a disability benefit claimant, the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them.").

The ALJ must provide "findings and determinations sufficiently articulated to permit meaningful judicial review." *DeLoatche* v. *Heckler*, 715 F.2d 148, 150 (4th Cir. 1983); *see also Wyatt* v. *Bowen*, 887 F.2d 1082, 1989 WL 117940, at *4 (4th Cir. 1989) (per curiam). The ALJ's RFC determination "must include a narrative discussion describing how the evidence supports

each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g. daily activities, observations)." *Mascio* v. *Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting SSR 96–8p). Furthermore, "[t]he record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." *Radford* v. *Colvin,* 734 F.3d 288, 295 (4th Cir. 2013). Fourth Circuit precedent "makes it clear that it is not [the court's] role to speculate as to how the ALJ applied the law to [her] findings or to hypothesize the ALJ's justifications that would perhaps find support in the record." *Fox* v. *Colvin*, 632 F. App'x 750, 755 (4th Cir. 2015).

Social Security Ruling 96–8p explains how adjudicators should assess residual functional capacity. The Ruling instructs that the residual functional capacity "assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions" listed in the regulations. "Only after that may [residual functional capacity] be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96–8p. The Ruling further explains that the residual functional capacity "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.*

There is no "per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis[.]" *Mascio*, 780 F.3d at 636. But "[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* (quoting *Cichocki* v. *Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)). The function-by-function requirement can be satisfied by reference to a properly conducted analysis

by a state agency consultant. *See, e.g.*, *Linares* v. *Colvin*, No. 5:14-CV-00129, 2015 WL 4389533, at *3 (W.D.N.C. July 17, 2015) ("Because the ALJ based his RFC finding, in part, on the function-by-function analysis of the State agency consultant, the ALJ's function-by-function analysis complied with [Soc. Sec. Ruling] 96–8p." (citing *Lemken* v. *Astrue*, No. 5:07-CV-33-RLV-DCK, 2010 WL 5057130, at *8 (W.D.N.C. July 26, 2010))).

The ALJ determined that Mooring could perform a reduced range of light work. Tr. at 86. A limitation to occasional overhead reaching with the bilateral upper extremities addressed issues she experienced with her neck and shoulders. Tr. at 86, 90.

Mooring asserts that the ALJ erred in failing to conduct a function-by-function assessment of her ability to reach. Mooring argues that the record shows that she is more limited than the RFC reflects. She claims that the evidence supports a finding that she is limited in her ability to reach in all directions, not merely overhead. And the issue is material to the disability determination. The Vocational Expert (VE) testified that there was no work at the light or sedentary levels for an individual who was limited to occasional reaching in all directions with the bilateral upper extremities. Tr. at 50.

The undersigned agrees that there is evidence in the record suggesting that Mooring's ability to reach in all directions, not just overhead, is compromised. Despite the fact that reaching was a contested function, the ALJ did not assess Mooring's ability to reach in all directions.

The record contains several instances noting that Mooring had decreased range of motion. But the entries neither specifically classified the impaired movement as involving only overhead reaching nor excluded limitations for reaching in other directions, such as forward or at shoulder-height. *See* tr. at 1612 (70 degree shoulder abduction); 1619 (noting significant limitations in shoulder flexion and abduction); 1622 (passive shoulder abduction of 70 degrees); 1623 (range of

motion less than it had been previously); 1630, 1638, 1656 (goal of full passive range of motion in all planes and improved active range of motion for reaching tasks); 1658 (decreased range of motion resulting in diminished ability to perform reaching and lifting tasks); 1674 (limited shoulder motion and significant function limitation with interventions providing no lasting relief); 1681 (significant range of motion loss shown on exam and decreased mobility noted with plan to improve shoulder motion in all directions); 1683 (shoulder flexion and abduction less than shoulder height of 90 degrees); 1685 (reporting difficulty with range of motion in upper left extremity); 1688 (reports of trouble reaching); 1690 (exam noting decreased range of motion in the shoulder); 1693 (trouble raising arm to full abduction); 2378 (positive Hawkins and O'Brien tests); 2456 (minimal progress made with range of motion and failed to meet therapy goals for flexion, abduction, and rotations); 2457 (pain with abduction movements); 2481 (pain aggravated by "arm dominant activities, lifting, overhead activity and reaching" and finding less than full shoulder flexion, abduction, and rotation); 2621, 2655 (therapy to focus on improving shoulder range of motion in all directions); 3940 (limited range of motion in left shoulder).

These entries raise the possibility that Mooring's difficulties with reaching are not limited to overhead reaching. This is why a function-by-function assessment is needed. And it shows why the failure to assess her ability to reach in all directions calls into question the reliability of the RFC determination to reflect all her limitations.

Other evidence may lend support to Mooring's claim of difficulty with reaching. A 2016 work injury required surgery to reattach her biceps muscle. Five years later, with worsening shoulder pain coupled with numbness and weakness in her upper extremities, an MRI showed a partial rotator cuff tear. Her provider believed the tear was 'much more extensive' than the MRI reflected and likely required surgical repair. Tr. at 1688. In March 2022, Mooring underwent

capsular release, subacromial decompression, and distal clavicle excision on her right shoulder. Tr. at 1668.

Physical therapy failed to achieve the goals of full range of motion in all planes. And the ALJ found that Mooring's morbid obesity exacerbated her musculoskeletal conditions. Tr. at 88.

Mooring's limited shoulder function continued after the relevant period at issue ended. She suffered a fall in May 2023 which caused additional shoulder pain. She again participated in physical therapy with minimal improvement in range of motion. Two months later, an MRI showed moderate stenosis due to bone spurring with questionable nerve root impingement in the cervical spine. Tr. at 2509. In August, an MRI of her left shoulder revealed severe osteoarthritis of the glenohumeral joint and moderate to severe supraspinatus tendinopathy. Tr. at 2369.

Mooring testified that she limits driving because she cannot use both arms well. Tr. at 87. She cannot reach into a cabinet with her left arm. *Id.* She underwent left shoulder replacement surgery in March 2024. *Id.* And her right shoulder occasionally freezes up. *Id.*

The ALJ identified no evidence undermining the limitations Mooring alleged. Mooring points out that the decision references evidence that supports the pain symptoms she claims. Nor does the decision explain the finding reflecting that Mooring has an unrestricted ability to reach in directions other than overhead. The decision does not explain how those records are consistent with unrestricted reaching in directions other than overhead. Without identifying what in the record supported a restriction on reaching overhead, but not in other directions, Mooring claims that there is no logical bridge from the evidence to the conclusions, thus frustrating meaningful review.

The Commissioner asserts that the ALJ's decision shows she thoroughly considered Mooring's impairment. It noted her testimony, the medical evidence of record, including the examination and treatment records, and imaging studies. Yet the substance of the Commissioner's

submission reiterates the evidence without explaining how it supports the ALJ's conclusion that reaching restrictions are limited to overhead reaching.

The longitudinal record reveals surgeries, Mooring's consistent complaints of pain, and objective evidence of her conditions from imaging studies and examination findings. Multiple courses of physical therapy to improve her range of motion in the upper extremities were unsuccessful. And injection therapy provided only temporary improvement in her symptoms. The evidence thus bolsters the limitations Mooring alleges.

In the face of the evidence, it is uncertain how the ALJ reached this determination that Mooring could occasionally reach overhead and could reach in all directions without limitation, or upon what evidence she based these findings. The lack of explanation frustrates the ability to conduct a meaningful review. *See Thomas* v. *Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) ("[A] proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion . . . . [M]eaningful review is frustrated when an ALJ goes straight from listing evidence to stating a conclusion.") (citing *Woods*, 888 F.3d at 694). And the lack of a function-by-function assessment of Mooring's ability to reach in all directions warrants further consideration. *See Blake* v. *O'Malley*, No. 5:23-CV-486-RJ, 2024 WL 3888910 (E.D.N.C. Aug. 24, 2024) (explaining that the absence of an explicit function-by-function analysis does not require remand when the ALJ otherwise sufficiently explains the evidentiary basis for the RFC) (citations omitted).

In sum, the ALJ's decision required, but did not include, both a function-by-function analysis of Mooring's contested abilities to reach in all directions and an explanation of how the evidence supported a conclusion that she could occasionally reach overhead and otherwise reach without limitation. These errors prevent the court from concluding that substantial evidence supports the RFC determination. *See Mascio*, 780 F.3d at 637 (finding remand is necessary where

a court is “left to guess about how the ALJ arrived at his conclusions on [a claimant’s] ability to perform relevant functions [.]”).

There is merit to Mooring’s argument that the RFC is flawed. So the court should remand the matter for further consideration of this issue.

## III. Conclusion

For these reasons, the district court should grant Mooring’s request for relief (D.E. 17), deny the Commissioner’s request for relief (D.E. 18), reverse the Commissioner’s final decision, and remand the matter to the Commissioner for further proceedings under sentence four of 42 U.S.C. § 405(g).

The Clerk of Court must serve a copy of this Memorandum and Recommendation (M&R) on each party who has appeared in this action. Any party may file a written objection to the M&R within 14 days from the date the Clerk serves it on them. The objection must specifically note the portion of the M&R that the party objects to and the reasons for their objection. Any other party may respond to the objection within 14 days from the date the objecting party serves it on them. The district judge will review the objection and make their own determination about the matter that is the subject of the objection. If a party does not file a timely written objection, the party will have forfeited their ability to have the M&R (or a later decision based on the M&R) reviewed by the Court of Appeals.

Dated: September 1, 2026

Robert T Numbers II

Robert T. Numbers, II
United States Magistrate Judge